**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

MICHAEL FLANAGAN,

    Plaintiff,

    v.

BOROUGH OF LAFLIN, PAUL
BENDERAVICH, Individually, CARL
YASTREMSKI, Individually, PATRICK
GILHOOLEY, Individually, ANTHONY
D'ELISEO, Individually, THOMAS
PARRY, Individually,

    Defendants.

CIVIL ACTION NO. 3:CV-13-2863

(JUDGE CAPUTO)

**FILED
SCRANTON**

MAR 28 2014

PER_____
      DEPUTY CLERK

## MEMORANDUM

Presently before the Court is the Motion to Dismiss Plaintiff Michael Flanagan's ("Flanagan") Amended Complaint (Doc. 14) filed by Defendants Borough of Laflin (the "Borough"), Paul Benderavich ("Benderavich"), Carl Yastremski ("Yastremski"), Patrick Gilhooley ("Gilhooley"), Anthony D'Eliseo ("D'Eliseo"), and Thomas Parry ("Parry") (collectively, "Defendants").[1]  Flanagan contends that Defendants retaliated against him in violation of the First Amendment, deprived him of his due process rights under the Fourteenth Amendment, and defamed him and cast him in a false light. Defendants' motion to dismiss will be granted in part and denied in part.  Because Flanagan adequately states claims under the First and Fourteenth Amendments to the United States Constitution, Defendants' motion to dismiss the federal law claims will be denied.  However, because the Borough is entitled to immunity pursuant to the Pennsylvania Political Subdivision Tort Claims Act and Individual Defendants are entitled to high public official immunity,

---

[1]    Defendants Benderavich, Yastremski, Gilhooley, D'Eliseo, and Parry are collectively the "Individual Defendants."

Defendants' motion to dismiss the state law claims will be granted.

## I. Background

The facts as set forth in the Amended Complaint are as follows:

Flanagan has worked for the Borough for fourteen (14) years. (*Am. Compl.*, ¶ 1.) In 2008, Flanagan became the Borough's Police Chief. (*Id*.) Defendants Benderavich and Yastremski are both alleged to be Borough Council President. (*Id*. at ¶¶ 3-4.) Defendants Gilhooley and D'Eliseo are Borough Council Members. (*Id*. at ¶¶ 5-6.) Defendant Parry is Borough Council Vice-President. (*Id*. at ¶ 7.) Individual Defendants are being sued in their individual capacities. (*Id*. at ¶¶ 3-7.)

In or about March 2013, Flanagan heard rumors that Defendants wanted to eliminate the police department. (*Id*. at ¶ 22.) Flanagan inquired as to the truth of the rumor, and Defendants confirmed its accuracy. (*Id*. at ¶ 23.) Flanagan advised Defendants that such an action would be unlawful because the police union had an existing contract with the Borough. (*Id*. at ¶ 24.) Benderavich responded to Flanagan by stating "we can do what we want." (*Id*. at ¶ 25.)

On numerous occasions, Benderavich illegally instructed Flanagan to disregard orders issued by the Laflin Borough Mayor as Benderavich attempted to usurp the Mayor's power. (*Id*. at ¶ 32.) Benderavich's orders were in direct conflict with those given by the Mayor who is in charge of the operations of the police department. (*Id*.) For example, on or about May 29, 2013, Benderavich and Flanagan got into an argument over shifts Benderavich wanted changed. (*Id*. at ¶ 35.) Flanagan became ill after that argument and was hospitalized. (*Id*.)

Benderavich also requested Flanagan to order Borough police officers to "write more tickets." (*Id*. at ¶ 33.) Benderavich threatened that the police department would be disbanded if more tickets were not written. (*Id*. at ¶ 34.)

On or about October 17, 2013, Individual Defendants voted at an official Borough meeting to demote Flanagan and hire another individual as Police Chief. (*Id.* at ¶ 14.) Prior to his demotion, Flanagan engaged in no wrongdoing. (*Id.* at ¶ 16.) And, before being demoted, Flanagan was not given notice of the charges against him, an explanation of the evidence against him, or an opportunity to rebut such allegations. (*Id.* at ¶¶ 18, 19.)

On November 26, 2013, the day after Flanagan commenced this action, Defendants mailed a letter requesting him to respond by the next day. (*Id.* at ¶¶ 41-43.) The letter provided if Flanagan did not timely respond, "the Borough will have no choice but to discharge you from your service as a police officer." (*Id.* at ¶ 43.)

Thereafter, on or about January 6, 2014, Defendants disclosed an alleged "request for investigation" to the local news media. (*Id.* at ¶ 44.) That letter was published in the newspaper on January 9, 2014 and was available to be downloaded on the website of the Citizens' Voice. (*Id.* at ¶¶ 44, 61.) While Flanagan was not the main focus of the letter, the letter sets forth allegations indicating that Flanagan conducted himself in a manner unbecoming of a police officer. (*Id.* at ¶ 46.)

Based on the foregoing, Flanagan commenced this action on November 25, 2013 asserting two claims. Flanagan asserted in Count I that he was denied his right to procedural due process when he was demoted, while Count II claimed that he was retaliated against in violation of the First Amendment after he opposed the proposed disbanding of the police department and he refused to follow the unlawful orders issued by Benderavich. (Doc. 1.)

Thereafter, on January 10, 2014, Flanagan filed a four-count Amended Complaint. (*Am. Compl.*) Counts I and II of the Amended Complaint again allege claims for violations of the Fourteenth and First Amendments respectively. (*Compare Am. Compl.,* Counts I & II, *with Compl.,* Counts I & II.) Count III of the Amended Complaint asserts a First

3

Amendment claim for Defendants' alleged retaliation against Flanagan after he commenced the instant lawsuit. (*Am. Compl.*, Count III.)  Count IV of the Amended Complaint asserts state law claims for defamation and false light invasion of privacy. (*Id.* at Count IV.)

Defendants filed a motion to dismiss the Amended Complaint in its entirety on January 24, 2014. (Doc. 14.)  Defendants' brief in support of its motion was timely filed on February 7, 2014. (Doc. 15.)  On February 14, 2014, Flanagan filed his brief in opposition to the motion to dismiss. (Doc. 16.)  Defendants filed a reply brief in further support of their motion on February 27, 2014. (Doc. 17.)  Defendants' motion to dismiss is now fully briefed and ripe for disposition.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).  When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of their claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000).  The Court does not consider whether a plaintiff will ultimately prevail. *See id.*  A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The statement required by Rule 8(a)(2) must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955.  However, mere conclusory

4

statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009). As such, "[t]he touchstone of the pleading standard is plausability." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, 127 S. Ct. 1955, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679, 129 S. Ct. 1937.

In deciding a motion to dismiss, the Court should consider the complaint, exhibits attached to the complaint, and matters of public record. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998

5

F.2d 1192, 1196 (3d Cir. 1993)). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Pension Benefit Guar.*, 998 F.2d at 1196. The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions.'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

### III. Discussion

### A.     Flanagan's Federal Law Claims

Flanagan's First and Fourteenth Amendment claims are brought against Defendants pursuant to 42 U.S.C. § 1983. Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen . . . or other person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured, . . ." 42 U.S.C. § 1983. Section 1983 is not itself a source of substantive rights, but a method for vindicating federal rights secured by the United States Constitution or federal statutes. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85, 122 S. Ct. 2268, 153 L. Ed. 2d 309 (2002). "To establish liability under 42 U.S.C. § 1983, a plaintiff must show that the defendants, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury." *Elmore v. Cleary*, 399 F.3d 279, 281 (3d Cir. 2005) (citing *Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 590 (3d Cir. 1998)).

### 1.     Procedural Due Process

In Count I of the Amended Complaint, Flanagan contends that he was deprived of his procedural due process rights protected by the Fourteenth Amendment to the United

States Constitution when he was demoted from the position of Police Chief. The Fourteenth Amendment provides that a state may not "deprive any person of life, liberty, or property, without due process of law, . . ." U.S. Const. amend. XIV, § 1. "To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006) (citing *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)).

For purposes of procedural due process, courts look to state law to determine whether a property interest exists. *Dee v. Borough of Dunmore*, 549 F.3d 225, 229 (3d Cir. 2008) (citing *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972) ("Property interests are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.")). Contract terms or provisions of collective bargaining agreements can also give rise to a protected property interest. *See id.* ("Dee had a constitutionally protected property interest based on the terms of the CBA"); *Unger v. Nat'l Residents Matching Program,* 928 F.2d 1392, 1397 (3d Cir.1991) ("Today it is beyond dispute that a contract with a state entity can give rise to a property right protected by the Fourteenth Amendment.").

Defendants argue that Flanagan's Fourteenth Amendment claim should be dismissed because he did not have a protected property interest in the Police Chief position. In opposition, Flanagan contends that he had a protected property interest in the position based on the Borough Code, the "Collective Bargaining Agreement between Laflin Borough and Laflin Borough Police Department," and the "Contract for Services Among Michael J. Flanagan as Chief of Police, The Borough of Laflin and The Borough of Laflin

Police Department By and Through its Collective Bargaining Unit."[2]

Article 21 of the Collective Bargaining Agreement provides, in pertinent part:

No full-time or part-time officer covered by this agreement shall be discharged, furloughed, laid off, suspended, demoted, or otherwise disciplined, except for "JUST CAUSE." The Employer shall state the reasons for "JUST CAUSE", in writing, to the officer within three days of such action.

. . .

The question of "JUST CAUSE" exists for the discharge, furlough, lay-off, suspension, demotion, or any other disciplinary action will be subject to the grievance/arbitration procedure.

(Doc. 17, Ex. A, ¶ 21.) Nevertheless, Defendants argue that the just cause provision in Article 21 does not apply to Flanagan as a result of Article 2 of the Collective Bargaining Agreement, which states:

RECOGNITION- Pursuant to Act 111 of 1968, The Borough of Laflin recognizes the Fraternal Order of Police, Wyoming Valley Lodge Number 36, as the exclusive representative for the collective bargaining purposes for all members of the Laflin Borough Police Department, including, but not limited to all full-time and regular part-time police *excluding the Chief of Police* and the Assistant Chief of Police.

(*Id.* at ¶ 2 (emphasis added).) In view of Article 2, Defendants conclude that the just cause provision does not apply to Flanagan, and, therefore, he does not have a property interest in his position as Police Chief pursuant to the terms of the Collective Bargaining Agreement.

As noted, however, the Borough, the Borough's Collective Bargaining Unit, and Flanagan were also signatories to the Contract for Services. (Doc. 15, Ex. A.) Paragraph

---

[2]    Neither the Collective Bargaining Agreement nor the Contract for Services were attached as exhibits to the Amended Complaint. Nevertheless, these documents are properly considered on the instant motion to dismiss because it is well-settled in the Third Circuit that "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Flanagan does not dispute the authenticity of the documents, and as he claims these documents establish a property interest in the Police Chief position, his claims are properly characterized as based on these documents.

VII of the Contract for Services provides:

> It is understood, bargained for, agreed and accepted that all other terms and conditions of the Collective Bargaining Agreement of January 1, 2008 to December 31, 2010 are incorporated into this contract and agreed upon as though fully set forth herein.

(*Id.* at ¶ 7.) Moreover, Paragraph IX of the Contract for Services states that "[i]nsofar as any of the terms of the Collective Bargaining Agreement conflict with this contract as it applies to the position of the Chief of Police and his managerial role, they are severed herefrom." (*Id.* at ¶ 9.)

At this stage of the litigation, Flanagan sufficiently alleges that he had a property interest in his position as Police Chief. Paragraph VII of the Contract for Services can be read to incorporate the just cause provision of the Collective Bargaining Agreement to Flanagan's employment as Police Chief.[3] And, the Third Circuit has "recognized that 'employment contracts that contain a just cause provision create a property interest in continued employment.'" *Dee v. Borough of Dunmore*, 549 F.3d 225, 231 (3d Cir. 2008) (quoting *Wilson v. MVM, Inc.*, 475 F.3d 166, 177 (3d Cir. 2007)). Conversely, however, the Contract for Services also provides that if Flanagan "is not reappointed as Chief, he shall enter the Collective Bargaining Unit as the full-time police officer." (Doc. 15, Ex. A, ¶ III.)

---

[3]     Defendants contend that even if the just cause provision applies to Flanagan, the procedural due process claim still fails because he does not allege that he complied with the grievance procedure set forth in Article 33 of the Collective Bargaining Agreement. *See, e.g., Griffin v. Municipality of Kingston*, No. 08-2290, 2011 WL 718697, at *2-3 (M.D. Pa. Feb. 22, 2011) ("Since Plaintiff did not avail himself of the grievance procedure available to him under the collective bargaining agreement, and this procedure complied with the due process requirements laid out in *Matthews*, Plaintiff's Procedural Due Process Claim will be dismissed."). However, as Article 33 requires grievances to be presented in writing to the Chief of Police, the applicability of this article to Flanagan is unclear when considered in relation to Paragraph IX of the Contract for Services. Thus, dismissal of the procedural due process claim is not warranted based on Flanagan's failure to allege that he did not grieve his demotion.

This provision could be interpreted as indicating that the just cause provision of the Collective Bargaining Agreement does not apply to Flanagan as Police Chief. In light of these competing interpretations of the Collective Bargaining Agreement and Contract for Services, dismissal of the procedural due process claim at this time is not warranted. Rather, whether Flanagan had a protected property interest in the Police Chief position based on these agreements will be resolved on a more developed record. Therefore, because Flanagan plausibly alleges the existence of a protected interest in his employment as Police Chief, he will be permitted to proceed with his Fourteenth Amendment claim.[4]

### 2. Retaliation

In Counts II and III of the Amended Complaint, Flanagan alleges that he was retaliated against in violation of the First Amendment to the United States Constitution. The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I. A First Amendment retaliation claim requires "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006) (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)); *cf. Gorum v. Sessoms*, 561 F.3d 179, 184 (3d Cir. 2009) ("To state a First Amendment retaliation claim, a public employee plaintiff must allege that his activity is protected by the First Amendment, and that the protected activity was a

---

[4]      Since Flanagan adequately alleges that he had a property interest based on the terms of the Collective Bargaining Agreement and Contract for Services, I need not consider at this time the parties' arguments regarding whether Flanagan had a protected property interest under the Borough Code.

substantial factor in the alleged retaliatory action.").

"[P]ublic employees do not surrender all their First Amendment rights by reason of their employment. Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *See Garcetti v. Ceballos*, 547 U.S. 410, 417, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006) (citing, *inter alia, Pickering v. Board of Education of Township High School Dist. 205, Will Cty.*, 391 U.S. 563, 568, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968), *Connick v. Myers*, 461 U.S. 138, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983) and *Rankin v. McPherson*, 483 U.S. 378, 384, 107 S. Ct. 2891, 97 L. Ed. 2d 315 (1987)). The Supreme Court has identified two inquiries to guide interpretation of the constitutional protections afforded to public employee speech. *Id.* at 418, 126 S. Ct. 1951. "The first requires determining whether the employee spoke as a citizen on a matter of public concern. If the answer is no, the employee has no First Amendment cause of action based on her or her employer's reaction to the speech." *Id.* (citing *Connick*, 461 U.S. at 147, 103 S. Ct. 1684). But, "if the answer is yes, then the possibility of a First Amendment claim arises. The question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." *Id.* According to the Third Circuit, these inquiries should proceed in the following three steps to ascertain whether a public employee's speech is protected by the First Amendment:

> First, as a threshold issue, we must determine whether the employee's speech was made pursuant to his or her official duties, and therefore was unprotected by the First Amendment, or whether it was constitutionally protected speech made as a citizen. If the speech was not made pursuant to an employee's official duties, we proceed to the analysis set forth in *Pickering v. Board of Education*, 391 U.S. 563, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968), and consider whether "the employee spoke as a citizen on a matter of public concern." If the answer to that question is yes, we must determine "whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." In other words, we strive to "'arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the

11

public services it performs through its employees.'"

*Morris v. Phila. Hous. Auth.*, 487 F. App'x 37, 39 (3d Cir. 2012) (internal citations omitted).

### a. Count II

In Count II of the Amended Complaint, Flanagan alleges that he was retaliated against after he spoke out regarding the proposed disbanding of the police department and he opposed Benderavich's instructions that he disregard orders given by the Borough Mayor. In moving to dismiss Count II, Defendants argue that Flanagan's speech occurred pursuant to his official duties, did not touch a matter of public concern, and there is no causal link between the protected activity and the claimed retaliatory action.

The Supreme Court held in *Garcetti* that a public employee does not "speak as a citizen" when he makes a statement pursuant to his "official duties." *Garcetti*, 547 U.S. at 421, 126 S. Ct. 1951; *see also Sexton v. Cnty. of York*, No. 12-CV-0402, 2012 WL 2192250, at *4 (M.D. Pa. June 14, 2012). "Restricting speech that owes its existence to a public employee's professional responsibilities," according to the Supreme Court, "does not infringe any liberties the employee might have enjoyed as a private citizen." *Garcetti*, 547 U.S. at 421, 126 S. Ct. 1951. Stated differently, the First Amendment does not shield the consequences of "expressions employees make pursuant to their professional duties." *Id.* at 426, 126 S.Ct. 1951. Thus, "the critical fact is whether the activity or speech performed by a public employee is within the scope of [the employee's] routine operations." *Sexton*, 2012 WL 2192250, at *4 (citations omitted). And, "whether a particular incident of speech is made within a particular plaintiff's job duties is a mixed question of fact and law." *Reilly v. City of Atlantic City*, 532 F.3d 216, 227 (3d Cir. 2008) (quoting *Foraker v. Chaffinch*, 501 F.3d 231, 240 (3d Cir.2007)).

Although the Supreme Court has not articulated "a comprehensive framework for defining the scope of an employee's duties," the Court has emphasized that the inquiry is

"a practical one." *Garcetti*, 547 U.S. at 424, 126 S. Ct. 1951. According to the Third Circuit, in making this "practical" inquiry, a court should examine, among other things:

> (1) whether the employee's speech relates to "'special knowledge' or 'experience' acquired through his job," *Gorum v. Sessoms*, 561 F.3d 179, 185 (3d Cir. 2009) (citing *Foraker v. Chaffinch*, 501 F.3d 231, 240 (3d Cir. 2007)); (2) whether the employee raises complaints or concerns about issues relating to his job duties "up the chain of command" at his workplace, *Foraker*, 501 F.3d at 241; (3) whether the speech fell within the employee's designated responsibilities, *Gorum*, 561 F.3d at 186; and (4) whether the employee's speech is in furtherance of his designated duties, even if the speech at issue is not part of them. *See Foraker*, 501 F.3d at 243.

*Kimmett v. Corbett*, - - - F. App'x - - -, 2014 WL 292670, at *4 (3d Cir. Jan. 28, 2014) (internal footnote omitted).

At this stage in the proceedings, the Amended Complaint sufficiently alleges that Flanagan's opposition to Benderavich's efforts to have him disregard the Mayor's orders and the disbandment of the police department were not pursuant to his official duties as Police Chief. In particular, Flanagan's speech purports to have attempted to bring to light information about public officials failing to properly fulfill their public responsibilities. Moreover, as these claims implicate factual questions about Flanagan's duties as Police Chief, it would be premature to resolve in this case and on these facts the contours of his job duties on a motion to dismiss.[5]

Next, Defendants argue that Flanagan's speech did not touch a matter of public concern. "An employee's speech addresses a matter of public concern when it can be 'fairly considered as relating to any matter of political, social, or other concern to the community.'" *See Holder v. City of Allentown*, 987 F.2d 188, 195 (3d Cir. 1993) (quoting *Connick*, 461 U.S. at 146, 103 S. Ct. 1684). Whether speech can be fairly characterized

---

[5]     To the extent that Flanagan's First Amendment claim is based on his opposing Benderavich's orders to "write more tickets," the Third Circuit rejected a similar claim in *Aubrecht v. Pennsylvania State Police*, 389 F. App'x 189, 193 (3d Cir. 2010) (police officer's "speech regarding the alleged 'quota' is not afforded constitutional protection.").

as addressing a matter of political, social, or other community concern requires consideration of the content, form, and context of the speech. *Id.* (citing *Connick*, 461 U.S. at 146-48, 103 S. Ct. 1684). "The content of the speech may help to characterize it as relating to a matter of social or political concern of the community if, for example, the speaker seeks to 'bring to light actual or potential wrongdoing or breach of public trust' on the part of government officials." *Id.* (quoting *Connick*, 461 U.S. at 148, 103 S. Ct. 1684). "This means that public speech cannot 'constitute merely personal grievances.'" *Brennan v. Norton*, 350 F.3d 399, 412 (3d Cir. 2003) (quoting *Feldman v. Phila. Hous. Auth.*, 43 F.3d 823, 829 (3d Cir. 1994)). Thus, "speech disclosing public officials' misfeasance is protected while speech intended to air personal grievances is not." *Swineford v. Snyder Cnty.*, 15 F.3d 1258, 1271 (3d Cir. 1994).

Defendants contend that Flanagan's speech about the reorganization of the police department did not touch a matter of public concern because it personally related to his employment with the Borough and the speech was communicated privately and not at a "public meeting" or through "another avenue which an average citizen would have access." (Doc. 17, 9.) Claims regarding a public official's abuse of office, which Flanagan contends is the case here, implicate matters of public concern. *See, e.g., Garcia v. Newtown Twp.*, 483 F. App'x 697, 702 (3d Cir. 2012) ("Matters of inherent concern to the public include official malfeasance, abuse of office, and neglect of duties.") Additionally, Flanagan's personal interest in the reorganization of the police department does not by itself compel the conclusion that the speech is of purely personal interest. *See, e.g., Beyer v. Duncannon Borough*, 428 F. App'x 149, 154 (3d Cir. 2011) ("Beyer's personal interest in the discussion of AR-15s because of his recommendation to purchase the weapons does not lead to the conclusion that the speech is of purely personal interest."); *Fryer v. Noecker*, 34 F. App'x 852, 853-54 (3d Cir. 2002) ("It is important to note that the case law is very clear that

14

matters are not disqualified from being matters of public concern simply because they touch on individuals and their desires.  To the contrary, regardless of the motive or the personal interest of the speaker, a matter will be deemed a matter of public concern if it is the type of issue that is important, in a self-governing society, for public employees to be free to express themselves about.").  And, the fact that Flanagan's speech was communicated privately and internally is not dispositive of whether his speech touched a matter of public concern. *See, e.g., Givhan v. Western Line Consol. Sch. Dist.*, 439 U.S. 410, 415-16, 99 S. Ct. 693, 58 L. Ed. 2d 619 (1979) ("Neither the [First] Amendment itself nor our decisions indicate that [the] freedom [of speech] is lost to the public employee who arranges to communicate privately with his employer rather than to spread his views before the public.") *Azzaro v. Cnty. of Allegheny*, 110 F.3d 968, 978 (3d Cir. 1997) ("if the content and circumstances of a private communication are such that the message conveyed would be relevant to the process of self-governance if disseminated to the community, that communication is public concern speech even though it occurred in a private context."); *Johnson v. Lincoln Univ. of Commonwealth Sys. of Higher Educ.*, 776 F.2d 443, 451-52 (3d Cir. 1985) ("neither the internal nature of the forum . . . nor the tone of the communications . . . controls whether this speech touched upon a matter of public concern."); *see also Dongguk Univ. v. Yale Univ.*, 734 F.3d 113, 129 (2d Cir. 2013) ("The fact that statements may have been communicated privately does not remove them from the ambit of speech entitled to First Amendment protections.").  At this stage in the litigation, Flanagan's allegations sufficiently indicate that he spoke on a matter of public concern.

Lastly, Defendants seek dismissal of the First Amendment claim in Count II on the basis that Flanagan fails to allege facts raising a causal inference between his purported protected activity and his demotion.  In order to adequately state the requisite causal connection for a retaliation claim predicated on the First Amendment, Flanagan must allege

15

sufficient facts showing "(1) an unusually suggestive time proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *DeFranco v. Wolfe*, 387 F. App'x 147, 155 (3d Cir. 2010) (citing *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)).

Here, accepting as true all allegations in the First Amended Complaint, Flanagan sufficiently states the requisite causal connection to proceed with his retaliation claim in Count II. Specifically, Flanagan alleges facts reflecting a pattern of antagonism from the time he first engaged in purported protected activity in March 2013 when he spoke against the proposed reorganization of the police department until his demotion in October 2013. *See, e.g., Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 302 (3d Cir. 2007) ("Where the time between the protected activity and adverse action is not so close as to be unusually suggestive of a causal connection standing alone, courts may look to the intervening period for demonstrative proof, such as actual antagonistic conduct or animus against the employee. . . ."). While Flanagan may be unable to establish causation after the parties engage in discovery, considering the facts as presented in the Amended Complaint he adequately alleges a causal connection between his protected activity and his demotion.

Therefore, Defendants' motion to dismiss the First Amendment retaliation claim in Count II of the Amended Complaint will be denied.

### b.   Count III

Flanagan also alleges a First Amendment retaliation claim in Count III of the Amended Complaint. Count III asserts that Defendants retaliated against Flanagan after he filed the instant lawsuit.

Flanagan's retaliation claim in Count III of the Amended Complaint will not be dismissed. "First Amendment retaliation claims are always individually actionable, even when relatively minor." *O'Connor v. City of Newark*, 440 F.3d 125, 127-28 (3d Cir. 2006).

16

Indeed, trivial acts may be sufficient if "under the circumstances it would be sufficient to deter a person of ordinary firmness from exercising his or her First Amendment rights." *Id.* at 128. This deterrence threshold is quite low, and a cause of action will lie for "all but truly de minimis violations." *Id*; *see also McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006) (explaining that "being the victim of petty harassments in the workplace as a result of speaking on matters of public concern is in itself retaliation- even if the employee cannot prove a change in the actual terms of his or her employment- and thus could be actionable under the First Amendment." ). Here, the letter threatening termination was mailed the day after Flanagan filed his Complaint. Thus, based on the averments in the Amended Complaint, Flanagan sufficiently alleges acts of retaliation that may plausibly deter a reasonable person from exercising his or her constitutional rights. He will therefore be permitted to proceed with Count III of the Amended Complaint.

## B.  Flanagan's State Law Claims

Lastly, Flanagan asserts claims for defamation and false light invasion of privacy under Pennsylvania law in Count IV of the Amended Complaint. In moving to dismiss the defamation and false light claims, Defendants argue that they are immune from Flanagan's state law tort claims. With respect to the state law claims against the Borough, Defendants assert that the claims should be dismissed pursuant to the Pennsylvania Political Subdivision Tort Claims Act ("PSTCA"). *See* 42 Pa. Cons. Stat. Ann. § 8541. Section 8541 provides that "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." *Id.*[6] "A borough, as a municipal corporation organized under the laws of the

---

[6]     The PSTCA enumerates a list of exceptions for liability in certain circumstances, namely where the local agency or its employees in their official capacities acted negligently. *See* 42 Pa. Cons. Stat. Ann. § 8542.

Commonwealth, qualifies as a local agency under the PPSTCA." *Mariano v. Borough of Dickson City*, No. 13-097, 2013 WL 6234622, at \*7 (M.D. Pa. Dec. 2, 2013) (citing *Schor v. North Braddock Borough*, 801 F.Supp.2d 369, 382 (W.D. Pa. 2011)). Because Flanagan's false light and defamation claims against the Borough do not fall within any of the exceptions set forth in § 8542, the Borough's motion to dismiss the state law claims will be granted. *See id.* (concluding that the PSTCA precluded state law claims against the borough defendant for defamation, false light, and publicity given to private life).

Individual Defendants seek dismissal of the state law claims on the basis that they are entitled to high public official immunity. "Pennsylvania 'exempts a high public official from all civil suits for damages arising out of false defamatory statements and even from statements or actions motivated by malice, provided the statements are made or the action taken in the course of the official's duties or powers.'" *Smith v. Borough of Dunmore*, 633 F.3d 176, 181 (3d Cir. 2011) (quoting *Lindner v. Mollan*, 677 A.2d 1194, 1195 (Pa. 1996)); *see also Ruder v. Pequea Valley Sch. Dist.*, 790 F. Supp. 2d 337, 401 (E.D. Pa. 2011) ("high public officials accused of defamation enjoy absolute immunity even when willful misconduct is alleged."). High public official immunity applies to defamation and false light claims, *see Mariano*, 2013 WL 6234622 at \*7, and Borough council members qualify as high public officials for purposes of this immunity. *See Smith*, 633 F.3d at 181 n.7 (citing *Osiris Enters. v. Borough of Whitehall*, 877 A.2d 560, 567 (Pa. Cmwlth. Ct. 2005); *Hall v. Kiger*, 795 A.2d 497, 500 (Pa. Cmwlth. Ct. 2002)).

Individual Defendants are entitled to high public official immunity "if it is apparent from the face of the complaint that (1) they qualify as high public officials, and (2) the 'allegedly actionable behavior was made in the course of their official duties.'" *Cornell Cos. v. Borough of New Morgan*, 512 F. Supp. 2d 238, 275 (E.D. Pa. 2007) (quoting *Osiris Enters.*, 877 A.2d at 567). In determining whether allegedly defamatory statements were

18

made in the course of an official's duties, "Pennsylvania courts evaluate certain factors to 'determine whether the statements are closely related to the official's legitimate duties: (1) the formality of the forum in which the words were spoken or published; and (2) the relationship of the legitimate subject of governmental concern to the person seeking damages for the defamatory utterance.'" *Id.* (quoting *Osiris Enters.*, 877 A.2d at 567).

Individual Defendants' motion to dismiss the state law claims will be granted. First, with respect to the state law claims against Yastremski, Gilhooley, D'Eliseo, and Parry, the Amended Complaint fails to allege these individuals were personally involved in making any false statements about Flanagan. Accordingly, as to the Individual Defendants other than Benderavich, the Amended Complaint is devoid of allagations which would allow Flanagan to sustain claims for false light invasion of privacy and defamation. *See, e.g., Mariano*, 2013 WL 6234622, at *8.

Second, Individual Defendants are entitled to high public official immunity for the allegedly defamatory letter Benderavich authored.[7] Viewing only the facts as set forth in the

---

[7]     Flanagan did not attach a copy of the letter requesting an investigation to the Amended Complaint. The tactic behind this strategy is apparent upon consideration of Flanagan's written submissions. (*Am. Compl.*, ¶ 44 ("[t]he exact date the letter was created is disputed"); Doc. 16, 2 ("on a motion to dismiss, the court is required to analyze the pleading and not disputed documents. Consequently, Defendants cannot use any of the documents since Plaintiff disputes the manner, meaning and date of the documents").) Flanagan's pleading illustrates precisely why a court may consider undisputedly authentic documents on a motion to dismiss; "[o]therwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." *Pension Benefit*, 998 F.2d at 1196 (citing *Goodwin v. Elkins & Co.*, 730 F.2d 99, 113 (3d Cir. 1984) (Becker, J., concurring)). While Flanagan disputes the date the letter was created, he has not raised a dispute as to the authenticity of its contents, nor has he suggested that the letter attached to the motion to dismiss differs from the letter that was provided to the media. Moreover, a dispute over the "meaning" of a document does not create a dispute as to the document's authenticity. And, as the defamation and false light claims are based on the letter and the letter is "integral to or explicitly relied upon in the

19

Amended Complaint, Individual Defendants are immune from Flanagan's defamation and false light invasion of privacy claims. In particular, Flanagan alleges that Benderavich, the Borough Council President, authored a letter requesting an investigation involving the impersonation of a police officer. (*Am. Compl.*, ¶¶ 44-46.) The fact that this statement "did not occur at a council meeting" (*Id.* at ¶ 60) is inconsequential, as statements made outside of council meetings are protected if they are made pursuant to the official's duties. *See Mariano*, 2013 WL 6234622, at *8. In this case, Flanagan alleges that the letter called into question his job performance and his competence as a supervisor, (*Am. Compl.*, ¶¶ 47, 61), and Benderavich is entitled to high public official immunity for these statements "regarding the job performance of a police officer, which is a matter of public importance and safety." *Mariano*, 2013 WL 6234622, at *8. Moreover, to the extent that Flanagan suggests that Benderavich is not entitled to high public official immunity because disclosure of the letter to the media is not part of his official duties, the Third Circuit rejected a similar argument in *Smith v. Borough of Dunmore*, 633 F.3d 176, 181-182 (3d Cir. 2011) ("The information disclosed to the local paper regarding the basis for Smith's suspension was 'closely related' to [the] duties of supervising the borough [fire department]." Consequently, the District Court correctly concluded that Pennsylvania's high public official immunity shields the Council members from any claim for defamation, . . ."). And, while Flanagan asserts that Benderavich has "made additional comments to the local press further defaming, placing Plaintiff in false light," (*Am. Compl.*, ¶ 62), he fails to plead any facts to substantiate this allegation.

    In addition to the facts as alleged in the Amended Complaint, a review of

----

complaint," it is properly considered here without converting Defendants' motion into one for summary judgment. *See Borough of Moosic v. Darwin Nat'l Assurance Co.*, - - - F. App'x - - -, 2014 WL 407477, at *2 (3d Cir. Feb. 4, 2014).

Benderavich's letter confirms that he is entitled to high public official immunity because he authored the letter pursuant to his official duties as Borough Council President. In requesting an investigation, Benderavich wrote "on behalf of the Council of the Borough of Laflin," seeking an investigation of purported criminal activity. (Doc. 15, Ex. C.) The request was made on Borough of Laflin stationary, and directed to the Pennsylvania State Police, Office of Attorney General, and the Federal Bureau of Investigations. (*Id.*) Because the investigation of criminal activity is a legitimate subject of concern for an elected borough official, Benderavich is entitled to high public official immunity for the allegedly defamatory letter. High public official immunity applies even if the letter was maliciously motivated as advocated by Flanagan. *See Smith*, 633 F.3d at 181. Count IV of the Amended Complaint will be dismissed.

## C. Leave to Amend

Because Flanagan's state law claims are deficiently pled, he requests leave to file a curative amendment. Rule 15 of the Federal Rules of Civil Procedure permits a court to grant a party leave to amend its pleading. *See* Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *See id.* "[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008) (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir.2004)). Here, as the Borough is immune from Flanagan's claims for defamation and false light invasion of privacy, leave to amend these claims would be futile. Similarly, because Individual Defendants are entitled to high public official immunity on this set of facts, amendment of the defamation and false light invasion of privacy of claims against Individual Defendants would also be futile. Therefore, the state law claims against all Defendants will be dismissed with prejudice.

21

### IV. Conclusion

For the above stated reasons, Defendants' motion to dismiss will be granted in part and denied in part. The motion to dismiss the federal law claims will be denied, and Flanagan will be permitted to proceed with his First and Fourteenth Amendment claims in Counts I-III of the Amended Complaint. Defendants' motion to dismiss the defamation and false light invasion of privacy claims will be granted, and Count IV of the Amended Complaint will be dismissed with prejudice.

An appropriate order follows.

March 28, 2014
Date

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge

22